IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| **LARRY JAMES RAINEY** | § | |
|     **TDCJ-CID #560039,** | § | |
|         **Plaintiff,** | § | |
| **V.** | § | **C.A. NO. C-06-097** |
| | § | |
| **DR. MAXIMILIANO HERRERA, ET AL.** | § | |
|     **Defendants.** | § | |

## MEMORANDUM AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

In this civil rights action brought pursuant to 42 U.S.C. § 1983, plaintiff Larry James Rainey claims that defendants were deliberately indifferent to his serious medical needs in violation of his Eighth Amendment right to be free from cruel and unusual punishment. (D.E. 1) Defendants Maximiliano Herrera, M.D., and Donna Randall, L.V.N., move for summary judgment to dismiss plaintiff's claims arguing that he received professional and adequate medical treatment such that he fails to state a claim for deliberate indifference, and, in the alternative, even if he received deficient care, they are entitled to qualified immunity. (D.E. 17, 20). Plaintiff has filed a response in opposition. (D.E. 18). For the reasons stated herein, it is respectfully recommended that defendants' motion for summary judgment be granted as to any claims arising between February 6, 2004, and August 26, 2004. As for plaintiff's claims alleging deliberate indifference after August 26, 2004, it is respectfully recommended that defendants motion for summary judgment be denied without prejudice to defendants filing a supplemental motion for summary judgment motion.

### I. JURISDICTION

The Court has federal question jurisdiction over this civil rights action pursuant to 28 U.S.C. § 1331.

## II. BACKGROUND AND PLAINTIFF'S ALLEGATIONS

Plaintiff is an inmate in the Texas Department of Criminal Justice, Criminal Institutions Division ("TDCJ-CID"), and is currently incarcerated at the McConnell Unit in Beeville, Texas. He filed this lawsuit on February 21, 2006, against Dr. Herrera and Nurse Randall alleging deliberate indifference to his serious medical needs. In particular, plaintiff claims that on February 14, 2004, he was the victim of a gang attack, and, as a result of the assault, he suffered hip and lower back pain. He claims that, following the assault, defendants failed to properly diagnose his injuries or to treat properly his pain or respond to his medical complaints. (D.E. 1). He seeks $100,000 in compensation for pain and suffering. Id. at 4.

Defendants filed their answer on May 5, 2006, and raised the defense of qualified immunity. (D.E. 14). On September 5, 2006, defendants filed their motion for summary judgment. (D.E. 17). On September 15, 2006, plaintiff filed a response in opposition. (D.E.18). On November 30, 2006, defendants were instructed to submit a copy of plaintiff's medical records.[1] (D.E. 19). On December 6, 2006, defendants filed an advisory to the Court, and submitted 66 pages of plaintiff's medical records, dated between August 11, 2003 and August 26, 2004. (See D.E. 20, Bates No. 4-70).

## III. SUMMARY JUDGMENT EVIDENCE AND UNCONTESTED FACTS

In support of their motion for summary judgment, defendants offer plaintiff's medical records, (D.E. 20, Exh. A)[2], and the affidavit of Dr. Steven Mercado, (D.E. 17, Exh. B), a physician

---

[1] Defendants purported to attach 66 pages of plaintiff's medical records as Exhibit A to their motion for summary judgment, however, only 22 pages were attached. (See D.E. 17 at Exh. A).

[2] Only the exhibits filed in defendants' advisory (D.E. 20) will be referenced in this memorandum and recommendation because the records attached to the original motion for summary judgment (D.E. 17)

who has reviewed plaintiff's medical records and testifies that plaintiff received the appropriate standard of medical care. In support of his summary judgment response, plaintiff offers his own affidavit and that of another offender, Terry Williams. He also offers copies of seven of his submitted sick call requests. (See D.E. 18, Exs. A and B).

The following facts are not in dispute:

On February 6, 2004, plaintiff was attacked in the recreation yard by other inmates. (D.E. 1 at 4). Following the assault, he was escorted to medical where he was evaluated by Maria Garcia, L.V.N., at approximately 9:53 that morning. (DX-A at Bates No. 6.). Nurse Garcia noted that plaintiff was alert and oriented. Id. His gait was steady. Id. She noted redness and swelling to his right cheek, abrasions to his left, upper and lower lip, and redness to the mid-chest and rib area. Id. She concluded that no treatment was indicated at the time. Id.

Later that afternoon, plaintiff returned to the infirmary complaining of right hip pain. He was seen by Lucy Martinez, L.V.N., who prescribed Tylenol. (DX-A at Bates No. 7).

On February 7, 2004, plaintiff submitted a sick call request complaining of hip pain and requesting that tests be done. (DX-A at Bates No. 24, 49).

On February 11, 2004, plaintiff was seen by physician's assistant ("PA") Westerfield. (DX-A at Bates No. 18). Notes indicate that plaintiff started experiencing hip pain "after running into water fountain 3 days ago..." Id. He did not mention the gang assault. Id. Upon examination, PA Westerfield noted a small area of ecchymosis of the right hip, but otherwise the exam was normal. Id. In addition, he had a full range of motion of his hip from back to leg. Id. PA Westerfield's

---

are incomplete. Defendants' exhibits are referred to as "DX" followed by the appropriate letter and page number. Plaintiff's exhibits are referred to as "PX."

assessment was contusion to the hip.  Id.  Her plan was to treat plaintiff with Naproxen and to obtain a pelvic x-ray to rule out any abnormality.  Id. x-ray .

Later that day, plaintiff filed another sick call request complaining of extreme pain in right hip/lower right back.  (DX-A at Bates No. 39).  It was noted that plaintiff had been seen by a PA earlier that day.  Id.

On February 19, 2004, plaintiff submitted a sick call request complaining of continued back and hip pain.  (DX-A at Bates. No. 61).  Nurse Staples answered his request on February 20, 2004, stating that his pain medications were current through February 25, 2004.  Id.

On March 4 and 5, 2004, plaintiff was seen by Mental Health Services during routine rounds. (DX-A at Bates No. 41, 42).  He requested materials on depression.  Id.  Notes indicate that on both days, he was calm and cooperative and his mental status was within normal limits.  Id.

On March 16, 2004, plaintiff submitted a second sick call request stating that he was in excruciating pain and needed to have the x-rays taken and/or pain relief.  (DX-A at Bates No. 60). Nurse Randall forwarded plaintiff's chart to the PA for a possible referral.  Id.

On March 18, 2004, plaintiff submitted a sick  call request to Nurse Randall stating that he was experiencing severe pain in his lower back and that it was getting worse.  (DX-A at Bates No. 59).  Plaintiff was seen that day by Dr. Herrera.  (DX-A at Bates No. 17-18).  Plaintiff complained of unremitting lower back pain and right hip pain that was not helped with Naproxen.  Id.  Upon examination, Dr. Herrera noted that plaintiff had full range of motion, he had negative straight leg raises, positive deep tendon reflexes, and his neurological impulses  were intact.  Id.  Dr. Herrera ordered x-rays of the lumbar spine and pelvis, and changed plaintiff's medication to Indocin.  Id.

4

On March 31, 2004, plaintiff filed a sick call request complaining that he needed to have his x-rays. (DX-A at Bates. No. 58). Nurse Randall responded that the x-rays had been ordered. Id.

On March 22, 2004, plaintiff complained of blisters on his foot. (DX-A at Bates No. 48). Nurse Randall scheduled him for an appointment. Id. On March 25, 2004, Nurse Randall saw plaintiff in the infirmary for treatment of his blisters. (DX-A at Bates No. 44-45). She noted that his chief complaint was itching and burning to his feet, and that his feet had scattered blisters and were cracking. Id. Her assessment was contact dermatitis/fungal infection, and her treatment plan was to apply medicated callus pads to the lesions, and to supply plaintiff with the medicated pads so that he could also apply them himself. Id. She also instructed plaintiff on the proper means for washing and drying his feet to aid in recovery. Id. Concerning his back pain, Nurse Randall responded that he was scheduled to see a PA. Id. at 47.

On April 6, 2004, plaintiff had x-rays of his lumbosacral spine and pelvis. (DX-A at Bates No. 53). The vertebral bodies of his lumbar spine were of normal height and configuration with normal maintenance of the intervertebral disc spaces. Id. There was no evidence of fracture or dislocation. Id. There was some pseudoarthrosis formation with the traverse process of L5 in the sacrum bilaterally, but otherwise the lumbosacral spine was essentially normal. Id. Similarly, the x-rays of plaintiff's pelvis were essentially unremarkable except for pseudoarthrosis of the traverse processes of L5. Id.

On April 7, 2004, plaintiff was seen by Dr. Herrera for a follow-up visit. (DX-A at Bates No. 21). Dr. Herrera noted that plaintiff was ambulating without assistance and that his back examination was essentially normal. Id. He continued plaintiff on Indocin for pain. Id.

On May 27, 2004, plaintiff submitted a sick call request complaining of unrelenting lower back pain. (DX-A at Bates No. 22, 57). On May 28, 2004, PA Chesterfield ordered that plaintiff be continued on Indocin. Id.

On June 24, 2004, plaintiff underwent a 90-day administrative segregation mental health assessment. (DX-A at Bates No. 41). The examiner noted no unusual behaviors or traumatic events within the last 90 days. Id. Plaintiff was oriented to person, place, and time, his thought processes were organized, and his cognition intact. Id. His speech was spontaneous and his thought content was within normal limits. Id.

On July 16, 2004, plaintiff inquired as to the results of his x-rays. (DX-A at Bates No. 56). By response dated July 17, 2004, he was informed that his x-rays were normal except for some arthritis. Id.

On July 26, 2004, plaintiff submitted a sick call request stating that he had run out of pain medication and was still having pain. (DX-A at 55). He was prescribed Indocin and given six refills. Id.

On August 18, 2004, plaintiff underwent another administrative segregation mental health assessment. (DX-A at Bates No. 40). His mental exam was unremarkable. Id. Plaintiff was oriented to time, place, and person, his speech was clear and coherent, and he had no suicidal or homicidal ideations or hallucinations. Id.

On August 25, 2004, plaintiff submitted two sick call requests, one complaining about his back pain, and the other complaining about blisters on his feet. (DX-A at Bates No. 46, 47). On August 26, 2004, Nurse Randall responded that he had an appointment with a PA to discuss both problems. Id.

## IV.  SUMMARY JUDGMENT STANDARD

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52. In making this determination, the Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits and admissions on file, and drawing all justifiable inferences in favor of the party opposing the motions. Caboni v. Gen. Motors Corp., 278 F.3d 448, 451 (5th Cir. 2002).

The Court may not weigh the evidence or evaluate the credibility of witnesses. See id. Furthermore, "affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify on the matters stated therein." Fed. R. Civ. P. 56(e); see also Cormier v. Pennzoil Exploration & Prod. Co., 969 F.2d 1559 (5th Cir. 1992) (refusing to consider affidavits that relied on hearsay statements); Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987) (stating that courts cannot consider hearsay evidence in affidavits and depositions). Unauthenticated and unverified documents do not constitute proper summary judgment evidence. King v. Dogan, 31 F.3d 344, 346 (5th Cir. 1994).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, the burden shifts to the nonmoving

party to come forward with specific facts showing that a genuine issue for trial does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). To sustain this burden, the nonmoving party cannot rest on the mere allegations of the pleadings. FED. R. CIV. P. 56(e); Anderson, 477 U.S. at 248-49. "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." Caboni, 278 F.3d at 451. "If reasonable minds could differ as to the import of the evidence . . . a verdict should not be directed." Anderson, 477 U.S. at 250-51.

The evidence must be evaluated under the summary judgment standard to determine whether the moving party has shown the absence of a genuine issue of material fact. "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248.

## V. DISCUSSION

### A. Official capacity claims.

Plaintiff has sued defendants in their official and individual capacities. He seeks $100,000 in damages. D.E. 1 at 4.

A suit against a prison employee in his official capacity is the same as a suit against the entity the employee represents. Kentucky v. Graham, 473 U.S. 159, 166 (1985). The Eleventh Amendment bars a suit for money damages against a state or state agency. Seminole Tribe of Florida v. Florida, 517 U.S. 44 (1996). A judgment may not be entered against a state officer in his official capacity for violating federal law in the past. Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc., 506 U.S. 139, 146 (1993).

To the extent plaintiff is suing Dr. Herrera and Nurse Randall in their official capacities for money damages, those claims are barred by the Eleventh Amendment, and it is respectfully recommended that those claims be dismissed with prejudiced as barred.

**B.      Qualified Immunity.**

Defendants moves for summary judgment on the grounds of qualified immunity. The qualified immunity determination involves a two-step analysis: first, "'whether the facts alleged, taken in the light most favorable to the party asserting the injury, show that the officer's conduct violated a constitutional right.'" Mace v. City of Palestine, 333 F.3d 621, 623 (5th Cir. 2003) (quoting Price v. Roark, 256 F.3d 364, 369 (5th Cir. 2001)). If a constitutional violation is alleged, the Court must next determine "whether the right was clearly established – that is 'whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" Id. at 624 (quoting Price, 256 F.3d at 369). Once defendants have invoked the defense of qualified immunity, the burden shifts to plaintiff to show that the defense is inapplicable. McClendon v. City of Columbia, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam).

The threshold question in a qualified immunity analysis is whether a constitutional right would have been violated on the facts alleged. Saucier v. Katz, 533 U.S. 194, 200 (2001).

      **1.      Deliberate indifference.**

Plaintiff claims that Dr. Herrera and Nurse Randall were deliberately indifferent to his serious medical needs alleging that they "suddenly cut-off and denied further treatment" for his severe back and hip pain. (D.E. 1 at 4).

*Step 1: Constitutional violation.*

In order to state a § 1983 claim for denial of adequate medical treatment, a prisoner must allege the official(s) acted with deliberate indifference to serious medical needs. Wilson v. Seiter, 501 U.S. 294, 303.(1991); Estelle v. Gamble, 429 U.S. 97, 105 (1976); Varnado v. Lynaugh, 920 F.2d 320, 321 (5th Cir. 1991). Deliberate indifference encompasses more than mere negligence on the part of prison officials. Farmer v. Brennan, 511 U.S. 825, 837 (1994). It requires that prison officials be both aware of specific facts from which the inference could be drawn that a serious medical need exists and then the prison official, perceiving the risk, must deliberately fail to act. Farmer, 511 U.S. at 837. Furthermore, negligent medical care does not constitute a valid § 1983 claim. Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993). See also Graves v. Hampton, 1 F.3d 315, 319 (5th Cir. 1993) ("[i]t is well established that negligent or erroneous medical treatment or judgment does not provide a basis for a § 1983 claim"). As long as prison medical personnel exercise professional medical judgment, their behavior will not violate a prisoner's constitutional rights. Youngberg v. Romeo, 457 U.S. 307, 322-23 (1982). Finally, active treatment of a prisoner's serious medical condition does not constitute deliberate indifference, even if treatment is negligently administered. See Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999); Mendoza, 989 F.2d at 195; Varnado, 920 F.2d at 321. "Deliberate indifference is an "extremely high standard to meet." Domino v. Texas Dep't of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001).

The uncontroverted evidence in this case, that is, plaintiff's medical records, establishes that Dr. Herrera and Nurse Randall were not deliberately indifferent to plaintiff's serious medical needs from February 6, 2004, the date plaintiff was allegedly assaulted by the gang members, through August 26, 2004. Following the February 6, 2004, assault, plaintiff was seen twice in the infirmary:

10

first by Nurse Garcia at 9:53 a.m. who noted that he had redness and bruising from the attack; and second, by Nurse Martinez at 1:32 p.m. who prescribed him Tylenol for his pain. (DX-A at Bates No. 6, 7). The next day, plaintiff complained about his right hip and back pain, (DX-A at Bates No. 24, 49), and four days later he was examined by PA Chesterfield. (DX-A at 18). Plaintiff's examination was essentially unremarkable, and PA Chesterfield's assessment was contusion to the right hip. Id. Plaintiff was prescribed Naproxen, 500 mg., to keep on his person. Id. On February 19, 2004, plaintiff complained of still having pain, but Nurse Staples noted that he still had pain medication. (DX-A at Bates No. 61).

According to the medical records, plaintiff's first encounter with Nurse Randall was on March 16, 2004. Plaintiff submitted a sick call request complaining of back pain and wanting medication for pain or anxiety. (DX-A at Bates No. 60). Nurse Randall responded that same day that she had sent his chart to a PA for possible renewal of his pain medication. Id.

Plaintiff sent another sick call request to Nurse Randall on March 18, 2004 (DX-A at Bates No. 59), and he was seen by Dr. Herrera that day. (DX-A at 17-18). Dr. Herrera noted plaintiff's complaints of lower back pain and right hip pain, and that Naproxen did not provide him with relief. Id. Dr. Herrera then conducted an examination, including straight leg raises, deep tendon reflexes, and range of motion. Id. He ordered x-rays of plaintiff's spine and pelvis. Id. His assessment was lower back pain and hip pain, and he prescribed plaintiff Indocin for pain relief. Id.

On April 6, 2004, plaintiff had x-rays taken of his lumbar spine and pelvis. (DX-A at Bates No. 53). On April 7, 2004, plaintiff saw Dr. Herrera for follow-up care. (DX-A at 21) Although the results of plaintiff's x-rays were not yet available, Dr. Herrera noted that he was ambulating without assistance, and that his back examination was essentially normal. Id. Dr. Herrera

continued plaintiff on Indocin. Id. Plaintiff had no contact with Dr. Herrera between April 2004 and the last available medical record, August 26, 2004.

Plaintiff's medical records do not support a claim of deliberate indifference against Dr. Herrera. Indeed, to the contrary, they show that plaintiff received prompt and professional care. When plaintiff first reported to Dr. Herrera, he complained of lower back pain, right hip pain, and that his medication did not help. Dr. Herrera conducted a physical examination, ordered x-rays for diagnostic purposes, and changed plaintiff's pain medication. He scheduled plaintiff for a follow-up visit and saw him three weeks later. He noted that plaintiff was ambulating. There is no notation of increased pain. Plaintiff's x-rays revealed no fracture or dislocation; only pseudoarthrosis. Plaintiff's medical records evidence that his sick call requests were answered, he was routinely examined, diagnoses were made, and medications prescribed. This evidence rebuts his allegations of deliberate indifference. Banuelos, 41 F.3d at 235. Plaintiff has failed to state a claim of deliberate indifference against Dr. Herrera from February 6, 2004, through August 26, 2004.

Similarly, the evidence rebuts any claim of deliberate indifference against Nurse Randall arising between February 6, 2004 and August 26, 2004. The undisputed evidence for this period of time reveals that each time plaintiff filed a sick call request, she responded within 24 hours and he was seen by a physician or medical staff shortly thereafter. When he complained of back and hip pain on March 18, 2004, Nurse Randall received the sick call request, and he was seen by Dr. Herrera that same day. (DX-A at 59, 17-18). Similarly, when he complained of blisters on his feet on March 22, 2004, she treated him herself on March 25, 2005. (DX-A at 48, 44-45). Although plaintiff claims that his sick call requests were ignored and that medical care was delayed, the sick call requests and medical records refute his claims. Plaintiff's sick call requests were answered frequently and

appointments were scheduled. (DX-A). The fact that plaintiff routinely wrote sick call requests complaining about his care does not refute his medical records that care was provided. Plaintiff's bald, conclusory allegations are insufficient to support a substantive constitutional claim. Koch v. Puckett, 907 F.2d 524, 530 (5th Cir. 1990). Plaintiff has failed to state a constitutional violation against Nurse Randall for the time period between February 6, 2004 and August 26, 2004.

### *Step 2: Objective reasonableness.*

For a right to be clearly established under the second step of the qualified immunity analysis, "[t]he contours of that right must be sufficiently clear that a reasonable officer would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). However, when the plaintiff fails to state a constitutional violation, as in this case, the Court need not examine whether the defendant's actions were reasonable. See Saucier, 533 U.S. at 201 (if the facts alleged do not establish that the officer's conduct violated a constitutional right, then the qualified immunity analysis need proceed no further and qualified immunity is appropriate).

In this case, plaintiff has failed to establish the violation of a constitutional right. Defendants provided prompt, adequate and appropriate medical care to him during the time from the alleged assault, February 6, 2004, through the date of plaintiff's August 26, 2004. Plaintiff, on the other hand, offered two different versions of the origin of his injury, assault versus running into a water fountain. The evidence shows that, during this time period, he received x-rays, two thorough physical examinations, one by a physician's assistant and one by a medical doctor, and was on pain medication for at least six months. Moreover, his sick call requests were timely answered, he was provided with keep-on-person medication passes, and was never turned away from the infirmary. His complaints

were not ignored. Accordingly, defendants are entitled to qualified immunity on plaintiff's claims of deliberate indifference to serious medical needs from February 6, 2004, through August 26, 2004.

**C.    Remaining Claims.**

Ostensibly, defendants are seeking summary judgment on all of plaintiff's claims; however, they have failed to offer any of his medical records dated after August 26, 2004. (See DX-A). Plaintiff's primary claim is that his pain medication was abruptly stopped in **August 2005**, without explanation, and that he has been denied proper medical care and treatment through September of 2006. (See D.E. 18 at 2; D.E. 1, att.grievance dated 10/25/05).

Defendants offer the affidavit of Dr. Steven Mercado who relates his opinion as to the standard of care defendants provided. (See DX B at 3-4). However, after August 26, 2004, there are no records to support his opinion. (See DX-A). Medical records that have not been introduced as evidence are hearsay. Fed. R. Evid. 801(c). To the extent Dr. Mercado's opinion is based on medical records that have not been introduced as evidence, it is unreliable and inadmissable.   See Fowler v. Smith, 68 F.3d 124, 126-27 (5th Cir. 1995) (for purposes of summary judgment, only admissible evidence included in the pretrial record may be considered); First Southwest Lloyds Ins. Co. v. MacDowell, 769 S.W.2d 954 (Tex. App.– –Texarkana 1989, writ denied) (an expert is not permitted to relate hearsay evidence as the basis for his opinion).

Moreover, even if Dr. Mercado's opinion was admissible, it too, fails to address the time period at issue: ***August 2005 to present.*** His opinion only goes to August 31, 2005, the date plaintiff alleges his medication was stopped.

Defendants have offered little evidence to do with the case *sub judice*. Plaintiff alleges that his pain medications were maliciously cancelled in August 2005. He has submitted grievances dated

after August 2005 that have not been answered or denied by the medical department. (PX-B at 1-7). A genuine issue of material fact exists as to whether plaintiff was suffering from a serious medical need and defendants acted with deliberate indifference toward that need from August 26, 2004 forward. To the extent defendants were seeking summary judgment on those claims, it is respectfully recommended that their motion be denied.

## VI. RECOMMENDATION

Plaintiff fails to establish that there exists a genuine issue of material fact regarding his claims of deliberate indifference against Dr. Herrera and Nurse Randall for the time period between February 6, 2004 and August 26, 2004, and defendants have established that they are entitled to summary judgment as a matter of law as to those specific claims. Accordingly, it is respectfully recommended that defendants' motion for summary judgment (D.E. 17) be granted in part, and that plaintiff's claims of deliberate indifference against Dr. Herrera and Nurse Randall arising between February 6, 2004 and August 26, 2004 be dismissed with prejudice.

To the extent plaintiff has raised claims of deliberate indifference for events arising after August 26, 2004 to the present, a genuine issue of material facts exists such that summary judgment is not proper. Accordingly, it is recommended that summary judgment as to those claims be denied without prejudice. Finally it is recommended that all official capacity claims against both defendants for money damages be dismissed.

Respectfully submitted this 14th day of December, 2006.

_____
B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE

NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within **TEN (10) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to 28 U.S.C. § 636(b)(1)(C); Rule 72(b) of the Federal Rules of Civil Procedure; and Article IV, General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a magistrate judge's report and recommendation within TEN (10) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error*, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415 (5th Cir. 1996) (en banc).